IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

RICKY ROULHAC,
      Petitioner,

vs.                                                                       Case No. 5:09cv56/MCR/EMT

EDWIN G. BUSS,[1]
      Respondent.
_____/

## ORDER and REPORT AND RECOMMENDATION

      This cause is before the court on Petitioner's petition for writ of habeas corpus filed under
28 U.S.C. § 2254 (Doc. 1).  Respondent filed an answer and relevant portions of the state court
record (Doc. 22).  Petitioner filed a reply (Doc. 33).

      The matter is referred to the undersigned magistrate judge for report and recommendation
pursuant to 28 U.S.C. § 636 and N. D. Fla. Loc. R. 72.2(b).  After careful consideration of all issues
raised by Petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for
the disposition of this matter, Rules Governing Section 2254 Cases 8(a).  It is further the opinion
of the undersigned that the pleadings and attachments before the court show that Petitioner is not
entitled to relief.

I.        BACKGROUND AND PROCEDURAL HISTORY

      The relevant aspects of the procedural background of this case are undisputed and established
by the state court record (*see* Doc. 22, Exhibits; Doc. 33 at 1).[2]  Following a jury trial in the Circuit
Court in and for Washington County, Florida, Petitioner was found guilty of sale of cocaine (Ex. B

---

[1] Edwin G. Buss succeeded Walter A. McNeil as Secretary for the Department of Corrections, and is
automatically substituted as Respondent.  *See* Fed. R. Civ. P. 25(d)(1).

[2] Hereinafter all citations to the state court record refer to the exhibits submitted with Respondent's answer
(Doc. 22).  If a cited page has more than one page number, the court cites to the page number that appears at the bottom
right of the page.

at 21, Ex. D).  On September 14, 2004, Petitioner was sentenced as a habitual felony offender to a term of twenty (20) years of imprisonment, with pre-sentence credit of 227 days, followed by a period of eight (8) years of probation (Ex. C at 207–13).

Petitioner, through counsel, appealed the judgment to the Florida First District Court of Appeal ("First DCA").  The First DCA affirmed the judgment per curiam without written opinion on December 15, 2005, with the mandate issuing January 3, 2006 (Exs. G, H).  Roulhac v. State, 918 So. 2d 296 (Fla. 1st DCA 2005) (Table).  Petitioner did not seek further review.

On February 14, 2006, Petitioner filed a pro se motion for post-conviction relief, pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure (Ex. I at 1–21).  The state circuit court appointed counsel to represent Petitioner (id. at 123) and held an evidentiary hearing on Petitioner's claims (Ex. J).  On February 13, 2007, the state circuit court denied Petitioner's Rule 3.850 motion (id. at 129–32).  Petitioner appealed the decision to the First DCA.  On November 19, 2008 the First DCA affirmed the decision per curiam without written opinion, with the mandate issuing December 16, 2008 (Exs. P, Q).  Roulhac v. State, 993 So. 2d 968 (Fla. 1st DCA 2008) (Table).

Petitioner filed the instant federal habeas action on February 17, 2009 (Doc. 1).  Respondent concedes that the petition is timely (Doc. 22 at 5).

II.     STANDARD OF REVIEW

Federal courts may issue habeas corpus relief for persons in state custody pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA). Pub.L. 104-132, § 104, 110 Stat. 1214, 1218-19.  In relevant part, § 2254(d) provides:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254 (2006).

The United States Supreme Court explained the framework for § 2254 review in <u>Williams v. Taylor</u>, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[3]   The appropriate test was described by Justice O'Connor as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

<u>Id.</u>, 529 U.S. at 412–13 (O'Connor, J., concurring).  The federal habeas court "determining whether [it] should overturn the state courts' rejection of the claim at issue" should "review the highest state court decision disposing of the claim."  <u>Harvey v. Warden, Union Corr. Inst.</u>, 629 F.3d 1228, 1237 (11th Cir. 2011); <i>see</i> <u>Knowles v. Mirzayance</u>, — U.S.—, 129 S. Ct. 1411, 1419, 173 L. Ed. 2d 251 (2009).

Employing the <u>Williams</u> framework, on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal state court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision."  <u>Lockyer v. Andrade</u>, 538 U.S. 63, 71–72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003).  The law is "clearly established" only when a Supreme Court holding at the time of the state court decision embodies the legal principle at issue.  Dicta in opinions is not controlling.  <u>Thaler v. Haynes</u>, — U.S. —, 130 S. Ct. 1171, 1173, 175 L. Ed. 2d 1003 (2010); <u>Bowles v. Sec'y for Dep't of Corr.</u>, 608 F.3d 1313, 1315 (11th Cir. 2010).  A federal court of appeals decision cannot clearly establish federal law for § 2254 purposes, even if its holding is directly on point.  <u>Bowles</u>, 608 F.3d at 1316 (citing <u>Renico v. Lett</u>, — U.S. —, 130 S. Ct. 1855, 1866, 176 L. Ed. 2d 678 (2010)).

---

[3] Unless otherwise noted, references to <u>Williams</u> are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

After identifying the governing legal principle, the court determines whether the state court adjudication is contrary to the clearly established Supreme Court case law.  To be entitled to deference, the state court decision need not cite to Supreme Court case law.  As the Supreme Court clarified: "Avoiding th[e] pitfalls [of § 2254(d)(1)] does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002) (quoting Williams, 529 U.S. at 405–06).  If the state court decision is contrary to clearly established federal law, the federal habeas court must independently consider the merits of the petitioner's claim. See Panetti v. Quarterman, 551 U.S. 930, 127 S. Ct. 2842, 168 L. Ed. 2d 662 (2007).

If the state court decision is not contrary to clearly established federal law, the federal habeas court must then determine whether the state court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases.  The federal court defers to the state court's reasoning unless the state court's application of the legal principle was "objectively unreasonable" in light of the record before the state court. Williams, 529 U.S. at 409; see Holland v. Jackson, 542 U.S. 649, 652, 124 S. Ct. 2736, 159 L. Ed. 2d 683 (2004) (per curiam); cf. Bell v. Cone, 535 U.S. 685, 697 n.4, 122 S. Ct. 1843, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).  An objectively unreasonable application of federal law occurs when the state court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001).  A state court may "decline to apply a specific legal rule that has not been squarely established by [the Supreme Court]" without running afoul of the "unreasonable application" clause. Knowles, 129 S. Ct. at 1419.  Notably, even a state court's incorrect or erroneous application of clearly established law will not warrant federal habeas relief unless it is also objectively unreasonable. See Schriro v. Landrigan, 550 U.S. 465, 473, 127 S. Ct. 1933, 167 L. Ed. 2d 836 (2007) ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially

higher threshold."); Harrington v. Richter, — U.S. —, 131 S. Ct. 770, 786–87, 178 L. Ed. 2d 624 (2011) ("As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.").

When faced with a state appellate court's summary affirmance of a trial court's decision, the "unreasonable application" standard focuses on the state court's ultimate conclusion, not the reasoning that led to it.   See Gill v. Mecusker,  633 F.3d 1272, 1287 (11th Cir. 2011) (citing Harrington, 131 S. Ct. at 786).  The federal court must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court.  See Harrington, 131 S. Ct. at 786; see also Gill, 633 F.3d at 1292 (holding that the federal district court may rely on grounds other than those articulated by the state court in determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  As with the "unreasonable application" clause, the Supreme Court applies an objective test.  Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (holding that a state court decision based on a factual determination "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding.").  The "unreasonable determination of the facts" standard is only implicated to the extent that the validity of the state court's ultimate conclusion is premised on unreasonable fact finding.  See Gill, 633 F.3d at 1292.

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the

petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see, e.g.*, <u>Miller-El</u>, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"). Neither the Supreme Court nor the Eleventh Circuit has interpreted how § 2254(d)(2) and §2254(e)(2) interact in the context of fact-based challenges to state court adjudications. <u>Cave v. Sec'y for Dep't of Corr.</u>, — F.3d. —, 2011 WL 1365021 (11th Cir. Apr. 12, 2011). However, in a recent Eleventh Circuit decision the court declined to grant habeas relief under § 2254(d)(2), in the context of a state appellate court's summary affirmance, where it found that the validity of the state court decision was not premised on the trial court's unreasonable fact finding, and that the petitioner failed to demonstrate "by clear and convincing evidence that the record reflect[ed] an insufficient factual basis for affirming the state court's decision." <u>Gill</u>, 633 F.3d at 1292.

Only if the federal habeas court finds that the petitioner satisfied AEDPA, and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims. *See* <u>Panetti</u>, 551 U.S. at 953. The writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a). "If this standard is difficult to meet, that is because it was meant to be." <u>Harrington</u>, 131 S. Ct. at 786.

## III.   EXHAUSTION AND PROCEDURAL DEFAULT

It is a long-standing prerequisite to the filing of a federal habeas corpus petition that the petitioner have exhausted available state court remedies, 28 U.S.C. § 2254(b)(1),[4] thereby giving

---

[4]Section 2254 provides, in pertinent part:

(b)(1)     An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–
    (A)  the applicant has exhausted the remedies available in the courts of the State; or
    (B) (i)  there is an absence of available State corrective process; or
        (ii)  circumstances exist that render such process ineffective to protect the rights of the applicant.
. . . .
(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." Duncan v. Henry, 513 U.S. 364, 365, 115 S. Ct. 887, 888, 130 L. Ed. 2d 865 (1995) (quoting Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)).  To satisfy the exhaustion requirement, the petitioner must "fairly present" his claim in each appropriate state court, alerting that court to the federal nature of the claim.  Duncan, 513 U.S. at 365–66; O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999); Picard, 404 U.S. at 277–78.

The Supreme Court has provided lower court with guidance for determining whether a habeas petitioner has met the "fair presentation" requirement.  In Picard v. Connor, the Court held that, for purposes of exhausting state remedies, a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts which entitle the petitioner to relief.  404 U.S. at 277.  In announcing that "the substance of a federal habeas corpus claim must first be presented to the state courts," id., 404 U.S. at 278, the Court rejected the contention in that case that the petitioner satisfied the exhaustion requirement by presenting the state courts only with the facts necessary to state a claim for relief.

Additionally, the Court has indicated that it is not enough that a petitioner make a general appeal to a constitutional guarantee as broad as due process to present the "substance" of such a claim to a state court.  Anderson v. Harless, 459 U.S. 4, 103 S. Ct. 276, 74 L. Ed. 2d 3 (1982).  In Anderson, the habeas petitioner was granted relief by the Sixth Circuit Court of Appeals on the ground that a jury instruction violated due process because it obviated the requirement that the prosecutor prove all the elements of the crime beyond a reasonable doubt.  459 U.S. at 7 (citing Sandstrom v. Montana, 442 U.S. 510, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979)).  The only manner in which the habeas petitioner cited federal authority was by referring to a state court decision in which "the defendant . . . asserted a broad federal due process right to jury instructions that properly explain state law."  Anderson, 459 U.S. at 7 (internal quotation marks omitted).  The Court expressed doubt that a defendant's citation to a state-court decision predicated solely on state law was sufficient to fairly apprise a reviewing court of a potential federal claim merely because the defendant in the cited case advanced a federal claim.  Id., 459 U.S. at 7 and n.3. Furthermore, the Court clarified that such a citation was obviously insufficient when the record satisfied the federal

habeas court that the federal claim asserted in the cited case was not the same as the federal claim on which federal habeas relief was sought.  *Id.*

Years later, the Supreme Court readdressed the "fair presentation" requirement in Duncan v. Henry, 513 U.S. 364.  The Duncan Court strictly construed the exhaustion requirement so as to mandate that, if state and federal constitutional law overlap in their applicability to a petitioner's claim, the petitioner must raise his issue in terms of the applicable federal right in state court in order to obtain federal review of the issue.[5]  The Supreme Court explained, "[i]f a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal, but in state court." Duncan, 513 U.S. at 365–66.  More recently, the Supreme Court again focused upon the requirement of "fair presentation," holding that "ordinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so." Baldwin v. Reese, 541 U.S. 27, 124 S. Ct. 1347, 1351, 158 L. Ed. 2d 64 (2004). In Baldwin, the Supreme Court recognized that "[a] litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'"  *Id.*, 541 U.S. at 32.  This language, while not part of the Court's holding, provides helpful instruction.  With regard to this language, the Eleventh Circuit explained in McNair v. Campbell, 416 F.3d 1291 (11th Cir. 2005):

> If read in a vacuum, this dicta might be thought to create a low floor indeed for petitioners seeking to establish exhaustion.  However, we agree with the district court that this language must be "applied with common sense and in light of the purpose underlying the exhaustion requirement[:] 'to afford the state courts a meaningful opportunity to consider allegations of legal error without interference from the federal judiciary.'"   McNair [v. Campbell], 315 F. Supp. 2d at 1184 (quoting Vasquez v. Hillery, 474 U.S. 254, 257, 106 S. Ct. 617, 620, 88 L. Ed. 2d 598 (1986)). This is consistent with settled law established by the Supreme Court. . . . We

---

[5] The petitioner in Duncan raised a federal due process claim in his habeas petition, but had raised only a state constitutional claim in his state appeal.  Presented with a state constitutional claim, the state court applied state law in resolving the appeal.  513 U.S. at 366.

> therefore hold that "'[t]he exhaustion doctrine requires a habeas applicant to do more
> than scatter some makeshift needles in the haystack of the state court record.'"

416 F.3d at 1302-03 (citations omitted).[6]

The Eleventh Circuit, prior to <u>Duncan</u>, had broadly interpreted the "fair presentation" requirement. After <u>Duncan</u>, however, the Eleventh Circuit has taken a more narrow approach. For example, in <u>Zeigler v. Crosby</u>, the court held that the habeas petitioner failed to "fairly present" his juror misconduct claims to the state courts where his brief to the state appellate court did not refer to the federal constitutional issues raised in his federal habeas petition, and none of the cases cited in his direct appeal discussed the United States Constitution. 345 F.3d 1300, 1307 (11th Cir. 2003). The Eleventh Circuit specifically noted that the section of the petitioner's appellate brief which dealt with juror misconduct contained the words: "Appellant was denied due process and a fair trial. . . .," which could be interpreted as asserting a fair trial claim under the Due Process Clause of the Florida Constitution. *Id.* at 1308 n.5. The only cases cited in the discussion of the issue in petitioner's state appellate brief were state supreme court cases that made no mention of the United States Constitution and cited no federal cases. The court concluded that petitioner's "[c]ursory and conclusional sentence (unaccompanied by citations to federal law), . . . did not present to the Florida courts the federal claim asserted to us." *Id.*

An issue that was not properly presented to the state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted, that is, procedurally barred from federal review. *See* <u>O'Sullivan</u>, 526 U.S. at 839–40, 848; <u>Bailey v. Nagle</u>, 172 F.3d 1299, 1302–03 (11th Cir. 1999). This court will also consider a claim procedurally defaulted if it was presented in state court and rejected on the independent and adequate state ground of procedural bar or default. *See* <u>Coleman v. Thompson</u>, 501 U.S. 722, 734–35 and n.1, 111 S. Ct. 2546, 2555 and n.1, 115 L. Ed. 2d 640 (1991); <u>Caniff v. Moore</u>, 269 F.3d 1245, 1247 (11th Cir. 2001) ("[C]laims

---

[6] In his initial brief before the Court of Criminal Appeals, McNair cited one federal case in a string citation containing other state cases, and in a closing paragraph in his argument that extraneous materials were considered by the jury during deliberations, stated that there was a violation of his rights "protected by the Fifth, Sixth, Eighth[,] and Fourteenth Amendments to the United States Constitution, the Alabama Constitution[,] and Alabama law." <u>McNair v. Campbell</u>, 416 F.3d 1291, 1303 (11th Cir. 2005). The court found that these references to federal law were not sufficient to meet the fair presentment requirement and noted that it was important that the petitioner had never mentioned the federal standards regarding extraneous materials in his brief, but relied on state law for his arguments. *Id.*

that have been held to be procedurally defaulted under state law cannot be addressed by federal courts."); Chambers v. Thompson, 150 F.3d 1324, 1326–27 (11th Cir. 1998) (applicable state procedural bar should be enforced by federal court even as to a claim which has never been presented to a state court); *accord* Tower v. Phillips, 7 F.3d 206, 210 (11th Cir. 1993); Parker v. Dugger, 876 F.2d 1470 (11th Cir. 1990), *rev'd on other grounds*, 498 U.S. 308, 111 S. Ct. 731, 112 L. Ed. 2d 812 (1991).  In the first instance, the federal court must determine whether any future attempt to exhaust state remedies would be futile under the state's procedural default doctrine. Bailey, 172 F.3d at 1303.  In the second instance, a federal court must determine whether the state's procedural default ruling rested on adequate state grounds independent of the federal question.  *See* Harris v. Reed, 489 U.S. 255, 109 S. Ct. 1038, 1043, 103 L. Ed. 2d 308 (1989).  The adequacy of a state procedural bar to the assertion of a federal question is itself a federal question.  Lee v. Kemna, 534 U.S. 362, 122 S. Ct. 877, 885, 151 L. Ed. 2d 820 (2002).  The adequacy requirement has been interpreted to mean that the rule must be "firmly established and regularly followed," Siebert v. Allen, 455 F.3d 1269, 1271 (11th Cir. 2006), that is, not applied in an "arbitrary or unprecedented fashion," Judd v. Haley, 250 F.3d 1308,1313 (11th Cir. 2001), or in a manifestly unfair manner.  Ford v. Georgia, 498 U.S. 411, 424-25, 111 S. Ct. 850, 858, 112 L. Ed. 2d 935 (1991); Upshaw v. Singletary, 70 F.3d 576, 579 (11th Cir. 1995).

The Eleventh Circuit has set forth a three-part test to determine whether a state court's procedural ruling constitutes an independent and adequate state rule of decision.  Judd v. Haley, 250 F.3d 1308, 1313 (11th Cir. 2001).  First, the last state court rendering judgment must clearly and expressly state it is relying on state procedural rules to resolve the federal claim.[7]  Second, the state court's decision on the procedural issue must rest entirely on state law grounds and not be intertwined with an interpretation of federal law.  Third, the state procedural rule must be adequate. *Id.*  The adequacy requirement has been interpreted to mean the rule must be firmly established and regularly followed, that is, not applied in an arbitrary or unprecedented fashion.  *Id.*

---

[7] The federal court should honor the procedural bar even if the state court alternatively reviewed the claim on the merits.  Marek v. Singletary, 62 F.3d 1295, 1302 (11th Cir. 1995); Alderman v. Zant, 22 F.3d 1541 (11th Cir. 1994).

To overcome a procedural default such that the federal habeas court may consider the merits of a claim, the petitioner must show cause and prejudice or a fundamental miscarriage of justice. Tower, 7 F.3d at 210; Parker, 876 F.2d 1470.  "For cause to exist, an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim." McCleskey v. Zant, 499 U.S. 467, 497, 111 S. Ct. 1454, 1472, 113 L. Ed. 2d 517 (1991) (quoting Murray v. Carrier, 477 U.S. 478, 488, 106 S. Ct. 2639, 2645, 91 L. Ed. 2d 397 (1986)).  Lack of counsel or ignorance of available procedures is not enough to establish cause.  Tower, 7 F.3d at 210.  To satisfy the miscarriage of justice exception, the petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent."  Schlup v. Delo, 513 U.S. 298, 327, 115 S. Ct. 85, 130 L. Ed. 2d 808 (1995).  "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him."  Schlup, 513 U.S. at 327.  Further:

> a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare.  To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial.

Id.

Within this framework, the court will review Petitioner's claims.

IV.   PETITIONER'S CLAIMS

A.   Ground One:  "Trial court error in allowing uniformed police officer, who was not involved in the controlled drug buy, to identify Petitioner as the person whom he saw at the scene after offense had occurred, violated Petitioner's right to due process and equal protection as guarenteed [sic] by the Fifth, Sixth and Fourteen Amendments to the United States Constitution."

Petitioner asserts the State's case consisted of testimony from several law enforcement officers and a videotape of a controlled drug buy (Doc. 1 at 4).  He states Officer Paul Demaree testified he had monitored undercover Officers Buff and Hedman's activities "on a wire," and after they made a controlled buy, he (Demaree) went to the location where they (Buff and Hedman) said the buy occurred (id.).  Demaree further testified that upon Buff and Hedman's showing him the location of the buy, he observed Petitioner at that location washing a car (id.).  Petitioner states

Demaree was not involved in the "hand to hand transaction" and that Demaree's testimony regarding "his knowledge of petitioners [sic] past" was prejudicial in that it only could have led the jury to believe that Petitioner had an extensive criminal background (*id.* at 5). Further, the testimony bolstered the testimony of two other officers (*id.*). Petitioner states he raised this claim on direct appeal of his conviction (*id.*).

Respondent contends Petitioner failed to exhaust his federal claim (Doc. 22 at 11). Respondent argues Petitioner raised the issue of trial court error on direct appeal, but, with the exception of a passing reference to due process, he made no reference to the Constitution and argued the issue as a state law evidentiary issue (*id.*). Notwithstanding the exhaustion issue, Respondent contends Petitioner has failed to show that the state court's adjudication of the claim was based upon an unreasonable determination of the facts or contrary to or an unreasonable application of clearly established federal law (*id.* at 11–15).

Upon review of the state court record, the undersigned concludes that Petitioner fairly presented the substance of his federal due process claim to the state court on direct appeal of his conviction (Ex. E at 14–18). He made the same argument he makes here, and argued that the erroneous admission of Demaree's identification testimony violated his right to due process under the Fifth and Fourteenth Amendments of the United States Constitution (*id.* at 18). This was sufficient to alert the state court to the federal nature of his claim. Therefore, the claim was exhausted for purposes of § 2254.

1.      Clearly Established Federal Law

Federal habeas relief is available to correct only constitutional injury. 28 U.S.C. § 2254(a); Wainwright v. Goode, 464 U.S. 78, 104 S. Ct. 378, 78 L. Ed. 2d 187 (1983); Engle v. Isaac, 456 U.S. 107, 102 S. Ct. 2976, 73 L. Ed. 2d 1361 (1981). Errors of state law which do not infringe upon a defendant's constitutional rights provide no basis for federal habeas corpus relief. Questions regarding state evidentiary rulings may be reviewed only when the alleged errors at trial so infected the entire trial that the resulting conviction violates due process. *See* Estelle v. McGuire, 502 U.S. 62, 72, 112 S. Ct. 475, 482, 116 L. Ed. 2d 385 (1991). The erroneous ruling must have "had substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 637, 113 S. Ct. 1710, 1722, 123 L. Ed .2d 353 (1993).

2.      Federal Review of State Court Decision

The First DCA denied Petitioner's claim without written opinion.  As previously discussed, when faced with a state appellate court's summary affirmance of a trial court's decision, the "unreasonable application" standard focuses on the state court's ultimate conclusion, not the reasoning that led to it.   *See* Gill,  633 F.3d at 1287 (citing Harrington, 131 S. Ct. at 786).  The federal court must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court.  *See* Harrington, 131 S. Ct. at 786; *see also* Gill, 633 F.3d at 1292 (holding that the federal district court may rely on grounds other than those articulated by the state court in determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts).

The trial transcript shows Officer Demaree testified he was a police officer with the Chipley Police Department and a member of the Washington County Joint Narcotics Task Force (Ex. D at 81–82).  He testified that on August 5, 2003, he worked with and supervised Officers Buff, Hedman, and Finch during an undercover drug operation (*id.* at 82–83).  Demaree testified that Officer Finch placed an audio and video recording device in a vehicle that Officers Buff and Hedman drove during the operation (*id.* at 83–84).  He testified he provided Officer Buff with money to make drug purchases and instructed Buff and Hedman to go to Pecan Street (*id.* at 84–85).  He testified he and Finch followed Buff and Hedman at a safe enough distance to not alert drug dealers to their presence but still monitor the controlled buys to ensure the safety of Buff and Hedman (*id.* at 85–86).  Demaree testified he received a signal from Buff and Hedman that they completed a drug transaction with a man wearing a white t-shirt at 640 Pecan Street (*id.* at 87–89, 90).  He testified he and Finch went to that location, and when they arrived one to three minutes later, he saw Ricky Roulhac (*id.* at 89, 90–91).  Defense counsel objected and asked to approach the bench (*id.*).  At sidebar, counsel argued that when a law enforcement officer identifies an individual, it is prejudicial because it suggests to the jury that the officer is familiar with the individual due to a past criminal record (*id.*).  The prosecutor proffered that Officer Demaree was going to testify only that he saw Ricky Roulhac

standing there, and he would not indicate he knew him from "any kind of past" (*id.*). The trial court overruled defense counsel's objection (*id.* at 89–90). Officer Demaree continued his testimony that he saw Ricky Roulhac wearing a white t-shirt, dark colored shorts, and a dark baseball cap, washing a vehicle in the front yard of 640 Pecan Street (*id.* at 90–91). He testified no one else was in the yard (*id.* at 91). Demaree testified that all of the officers met at the Washington County Sheriff's Office, and because he was the case agent, he retrieved evidence (crack cocaine) from Officer Hedman (*id.* at 92). He testified regarding the chain of custody of the evidence from the time he obtained it from Hedman to its transmission to the Florida Department of Law Enforcement for testing (*id.* at 92–96). The prosecutor asked Officer Demaree if Ricky Roulhac was in the courtroom, and Demaree responded yes and pointed to Petitioner (*id.* at 94–95). The prosecutor asked Demaree how long he had lived in Chipley, and he stated seven or eight years (*id.* at 95). He stated he was familiar with all the citizens in Chipley (*id.*).

The First DCA's rejection of Petitioner's due process claim may be supported by several theories. Petitioner claimed on direct appeal that Officer's Demaree's testimony that he saw "Ricky Roulhac" in the yard when he arrived at the scene approximately three minutes after the drug transaction, impermissibly suggested to the jury that Demaree knew Petitioner (and knew him by name) because Petitioner had a criminal background (*see* Ex. E at 14–18). He also asserted, similarly, that because Officer Demaree "did not testify how he knew [Petitioner], whether from high school, church, or volunteer work, the obvious implication is that [Petitioner] was a known law breaker and that he must be guilty" (Ex. E at 17). The First DCA may have concluded that Demaree's testimony created no inference of past criminal activity because, contrary to Petitioner's assertion, Officer Demaree explained how knew Petitioner (that is, Officer Demaree testified that he had lived in Chipley for some time and knew all of its citizens).

Alternatively, the First DCA may have concluded that if Officer Demaree's testimony created some impermissible inference, it had no substantial or injurious effect in determining the jury's verdict, and that the State had a legitimate purpose for calling Officer Demaree as a witness. Demaree's testimony set the scene for the undercover buy and, perhaps more important, established the necessary chain of custody for the purchased narcotics. Moreover, Demaree's testimony followed the testimony of Officers Buff and Hedman, both of whom were directly involved in the

drug transaction and positively identified Petitioner during their testimony as the person with whom the drug transaction was conducted (Ex. D at 47 (Buff), 66–67 (Hedman)).  Furthermore, Officer Demaree did <u>not</u> identify Petitioner as the person depicted on the videotape or who sold the narcotics to Officers Buff and Hedman; nor did he testify that Petitioner was previously involved in any type of criminal activity.  He merely identified Petitioner as the person he observed wearing a white t-shirt and washing a car when he arrived at 640 Pecan Street within three minutes of the drug transaction.[8]

Finally, in concluding that Officer Demaree's testimony had no substantial or injurious effect on the verdict, the First DCA may also have considered the strong evidence of Petitioner's guilt. In addition to Demaree's testimony the jury heard the testimony of Officers Buff and Hedman that they saw a man wearing a white t-shirt, dark colored hat, and jean shorts, on Pecan Street washing a car; they stopped their vehicle; the man offered to sell them crack cocaine for $50.00; Buff paid the man $20.00, and the man gave them part of the cocaine (*id.* at 34–39, 61–64).  And, as previously noted, Officers Buff and Hedman identified Petitioner as the seller (*id.* at 47, 66–67). Additionally, the jury was permitted to view the videotape of the sale (*id.* at 23–47, 55–67). Furthermore, Officer Finch testified Petitioner was the man he saw at the location of the controlled buy two to three minutes after the transaction (*id.* at 106–13).

Petitioner has failed to demonstrate that the First DCA's adjudication of his claim was contrary to or an unreasonable application of Supreme Court precedent.  Therefore, he is not entitled to federal habeas relief on his due process claim.

---

[8] Thus, the facts of the instant case are clearly distinguishable from those cited by Petitioner in his brief before the First DCA.  *See* Ex. D at 15–17 (citing <u>State v. Price</u>, 701 So. 2d 1204 (Fla. 3d DCA 1997) (prosecution may not disclose the occupation of a law enforcement officer who provides opinion testimony identifying a defendant as same person depicted on a videotaped drug transaction, where officer was not involved in transaction, reviewed videotape sometime later, and testified purely to provide identification opinion testimony based on his familiarity with defendant); <u>Edwards v. State</u>, 583 So. 2d 740 (Fla. 1st DCA 1991) (officer's identification testimony, who was not present at scene but later reviewed videotape, might be deemed admissible if he is not identified to the jury as a police officer); <u>Hardie v. State</u>, 513 So. 2d 791, 792 (Fla. 4th DCA 1987) (defendant prejudiced where witnesses were identified as police officers and testified that defendant was person depicted in a videotaped robbery, "because it created the impression that he had been involved in other criminal activities or had a prior record"); <u>Willis v. State</u>, 669 So. 2d 1090, 1093 (Fla. 3d DCA 1996) (defendant unduly prejudiced, and his right to fair trial denied, in light of "officer's gratuitous testimony that Willis had previous contacts with the police in other 'incidents'")).

**B.    Ground Two:   "Counsel's failure to understand the facts and laws in regard to objecting to the prosecution's use of leading questions during trial violated Petitioner's right to effective counsel as guarenteed [sic] by the Constitution."**

Petitioner asserts the prosecutor asked leading questions of the State's witnesses throughout the trial, and defense counsel failed to object (Doc. 1 at 5).  For example, during direct examination of Officer Buff the prosecutor elicited testimony regarding Buff's credentials as a law enforcement officer and an account of the controlled buy by asking leading questions (*id.*).  Additionally, during re-direct examination of Officer Hedman and direct examination of Officers Demaree and Finch, the prosecutor asked leading questions (*id.* at 5–6).  Petitioner states he presented this claim in his Rule 3.850 motion and on appeal of the state circuit court's denial of the motion (*id.* at 7).

Respondent concedes Petitioner exhausted this issue by raising it in his Rule 3.850 motion and on appeal of the state circuit court's denial of the motion (Doc. 22 at 15).  Respondent contends, however, Petitioner failed to demonstrate that the state court's adjudication of the claim was contrary to or an unreasonable application of clearly established federal law (*id.* at 16–22).

1.    Clearly Established Federal Law

The standard for evaluating claims of ineffective assistance of counsel is set forth in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).  To obtain relief under Strickland, Petitioner must show (1) deficient performance by counsel and (2) a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different.  466 U.S. at 687–88.  If Petitioner fails to make a showing as to either performance or prejudice, he is not entitled to relief.  *Id.* at 697.  Thus, this court need not address the prejudice prong if the court determines that the performance prong is not satisfied.  Turner v. Crosby, 339 F.3d 1247, 1279 (11th Cir. 2003); Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000) ("Because both parts of the test must be satisfied in order to show a violation of the Sixth Amendment, the court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa.") (citation omitted).

"The petitioner's burden to prove, by a preponderance of the evidence, that counsel's performance was unreasonable is a heavy one." Jones v. Campbell, 436 F.3d 1285, 1293 (11th Cir. 2006) (citing Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc)).  The focus

of inquiry under the performance prong is "reasonableness under prevailing professional norms." Strickland, 466 U.S. at 688–89.  "Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."  Id. at 689.  If the record is not complete regarding counsel's actions, "then the courts should presume 'that what the particular defense lawyer did at trial—for example, what witnesses he presented or did not present—were acts that some lawyer might do." Jones, 436 F.3d at 1293 (citing Chandler, 218 F.3d at 1314–15 n.15).  Furthermore, "[e]ven if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so."  Rogers v. Zant, 13 F.3d 384, 386 (11th Cir. 1994).  Counsel's performance is deficient only if it is "outside the wide range of professional competence."  Jones, 436 F.3d at 1293 (citing Strickland, 466 U.S. at 690); Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation").  "[T]here are no 'absolute rules' dictating what reasonable performance is or what line of defense must be asserted." Michael v. Crosby, 430 F.3d 1310, 1320 (11th Cir. 2005) (quoting Chandler, 218 F.3d at 1317). Indeed, "'[a]bsolute rules would interfere with counsel's independence—which is also constitutionally protected—and would restrict the wide latitude counsel have in making tactical decisions.'"  Id. (quoting Putman v. Head, 268 F.3d 1223, 1244 (11th Cir. 2001)).

As to the prejudice prong of the Strickland standard, Petitioner's burden of demonstrating prejudice is high.  See Wellington v. Moore, 314 F.3d 1256, 1260 (11th Cir. 2002).  The Supreme Court has cautioned that "'[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding.'"  Id. (quoting Strickland, 466 U.S. at 693). However, the Court has also clarified that a petitioner need not demonstrate it "more likely than not, or prove by a preponderance of evidence," that counsel's errors affected the outcome.  Strickland, 466 U.S. at 693–94.  Instead,

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Id.* at 694.

The prejudice assessment does "not depend on the idiosyncracies of the particular decisionmaker," as the court should presume that the judge or jury acted according to law. Strickland, 466 U.S. at 694–95.  "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt."  *Id.* at 695.

Finally, when a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact.  Strickland, 466 U.S. at 698, 104 S. Ct. at 2070; Collier v. Turpin, 177 F.3d 1184, 1197 (11th Cir. 1999).

### 2.  Federal Review of State Court Decision

Petitioner raised this claim as Claim One in his Rule 3.850 motion (Ex. I at 4–9).  The state circuit court held an evidentiary hearing on this claim (Ex. N at 421–53).  At the conclusion of the hearing, the parties agreed that Strickland established the legal standard applicable to Petitioner's claim (Ex. J at 226–27).  Additionally, the state circuit court correctly identified the Strickland standard as the controlling legal standard in its written decision (Ex. I at 132).  The court found as fact that while the prosecutor asked questions to which defense counsel could have objected, and which the trial court may have determined were leading, counsel's failure to object was a tactical decision (*id.* at 129).  Additionally, the court determined that if defense counsel had objected, the prosecutor would have been allowed to elicit the same information by rephrasing the questions (*id.*). Therefore, the outcome of the trial would not have been different (*id.*).

Petitioner included this issue in his initial brief on appeal of the circuit court's denial of his motion (Ex. N).  The First DCA affirmed the decision without written opinion (Ex. P).

 "The question of whether an attorney's actions were actually the product of a tactical or strategic decision is an issue of fact, and a state court's decision concerning that issue is presumptively correct." Provenzano v. Singletary, 148 F.3d 1327, 1330 (11th Cir. 1998). However, "the question of whether the strategic or tactical decision is reasonable enough to fall within the wide range of professional competence is an issue of law not one of fact."  *Id.*

Petitioner has not proffered any evidence to rebut the state court's factual finding that Mr. Griffith's failure to object to leading questions was a tactical decision.  Further, the finding is well-supported by the record.  At the evidentiary hearing on Petitioner's Rule 3.850 motion, Petitioner's defense counsel at trial, Mr. Griffith, testified as follows regarding his failure to object to leading questions:

> A [by Mr. Griffith].  . . . I don't think all the questions that were [identified by Petitioner] were leading. . . .
>
> Q [by the State].  Okay.  If you had felt that a question was leading, and he's claiming that you did not object, is there a reason you wouldn't have objected?
>
> A.  Sometimes that backfires on you when you're the trial attorney.  If a prosecutor asks a question that's leading, if they're going to be able to get the same answer anyway and you object, and the Prosecutor will then look at the Jury and the Judge, and when the Judge sustains the objection, if the Judge does, and ask three or four questions that will take extra time out of the trial to get the same information before the Jury, it makes me look foolish doing that.
>
> Q.  . . . could the Jury draw from that the Defense attorney was attempting to keep something from the Jury?
>
> A.  It's possible, or dragging things out.
>
> Q.  If there had been leading questions in the case . . . was [it] a decision on your part that it would have been information that would have come out if I had rephrased or the Prosecutor has rephrased the question?
>
> A.  Yes, ma'am, I would expect so.
>
> Q.  If there was any question that called for a response to bring out information or evidence that was not relevant or would not have been legally accessible to the Jury, would you have objected to those questions?
>
> A.  Yes, ma'am, and I believe I did object to a couple of questions during the course of this trial for that reason.
>
> Q.  . . . is it standard practice then if a question is objected to because it is leading, is the standard practice then for the Prosecutor to have an opportunity to rephrase the question if they desire?

    A.  That's been my experience, or if I were to object to the question as being leading and the Judge sustains the objection, there's nothing to prevent the Prosecutor from asking a different question to elicit the same information whether they're given permission by the Court or not.

    Q.  Right.

    A.  They can ask the question a different way and then see if it's objected to.

    Q.  In other words, the same information would have been brought out in the trial?

    A.  I would expect so.

(Ex. J at 199–201).  Therefore, this court presumes that counsel made a tactical decision not to object to leading questions.

  Additionally, Mr. Griffith's reasons for failing to object were sound.  Had he objected to questions as leading, the prosecutor likely would have elicited the same testimony form the witness by rephrasing her questions.  This is especially true since the Florida Evidence Code permits a witness to refresh his or her memory by reviewing a writing or other item, for example the incident report (Ex. B at 2) or the videotape of the controlled buy that was published to the jury.  *See* Fla. R. Evid. 90.613.  Such objections would thus have been ineffective and reasonably could have been perceived by the jury as intended to keep information from them or designed to interrupt or delay the proceedings.  Moreover, it is Petitioner's burden under <u>Strickland</u> to demonstrate a reasonable probability that the result of trial would have been different if counsel had objected to the allegedly leading questions.  Petitioner proffered nothing, either in state court or in this proceeding, to suggest that Mr. Griffith's objections to leading questions would have changed the evidence presented to the jury (for example, he has not identified any specific information that the jury would not have heard if counsel had objected).

  Based upon the foregoing, Petitioner has failed to show that the state court's adjudication of his claim was based upon an unreasonable determination of the facts, or contrary to or an unreasonable application of <u>Strickland</u>.

C.      Ground Three:  "Counsel's failure to understand the facts and laws in regard to
pretrial investigaiton [sic] and calling of witnesses violated Petitioner's right to effective
counsel as gaurenteed [sic] by the Constitution."

In Ground Three, Petitioner argues defense counsel performed ineffectively by failing to investigate medical records and other witnesses who would have supported his misidentification defense (Doc. 1 at 7–9).  Petitioner asserts he and Mr. Griffith viewed the videotape of the controlled buy, and he informed counsel that the drug seller in the videotape did not have a scar on his arm, but Petitioner had a scar as a result of an accident in April of 2001, for which he received medical treatment at a hospital in Chipley, Florida (*id.* at 7).  Petitioner contends counsel should have obtained medical records documenting his injuries (*id.*).  Petitioner concedes defense counsel showed the jury the differences between Petitioner's arm and the seller's arm in the videotape (*id.* at 9).  But he contends this was insufficient, because the jury was left to believe he received the scars after the video was taken (*id.*).  Petitioner states he presented this claim in his Rule 3.850 motion and on appeal of the state circuit court's denial of the motion (*id.*).

Respondent concedes Petitioner exhausted this issue by raising it in his Rule 3.850 motion and on appeal of the state circuit court's denial of the motion (Doc. 22 at 23).  Respondent contends, however, Petitioner failed to demonstrate that the state court's adjudication of the claim was contrary to or an unreasonable application of clearly established federal law (*id.* at 23–29).

In Petitioner's reply, he includes an additional argument that counsel should have called two witnesses, who he identifies simply as having the last name Roulhac, to testify that the man in the videotape was Ricky Kennedy, not Ricky Roulhac (Doc. 33 at 5).  Petitioner contends he would have been acquitted if counsel had presented testimony from these witnesses (*id.*).

1.      Clearly Established Federal law

As previously discussed, the clearly established federal standard governing claims of ineffective assistance of counsel is the Strickland standard.  Pursuant to Strickland, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.  Strickland, 466 U.S. at 691.  In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.  *Id.*  "One of the primary duties

defense counsel owes to his client is the duty to prepare himself adequately prior" to a legal proceeding.  Lawhorn v. Allen, 519 F.3d 1272, 1295 (11th Cir. 2008) (quoting Magill v. Dugger, 824 F.2d 879, 886 (11th Cir. 1987)).  Such preparation includes an understanding of the legal procedures and the legal significance of tactical decisions within those proceedings.  Young v. Zant, 677 F.2d 792, 794, 799–800 (11th Cir. 1982) (an attorney's reliance on former law and unawareness of procedure deprived his client of effective assistance).  Counsel's decision whether to call a particular witness is a matter of trial strategy entitled to great deference.  Chandler, 218 F.3d at 1314 n.14 (citing Waters v. Thomas, 46 F.3d 1506, 1512, 1518–19 (11th Cir. 1995) (en banc)).  "Complaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative." Buckelew v. United States, 575 F.2d 515, 521 (5th Cir. 1978).[9]

>     2.     Federal Review of State Court Decision

Petitioner raised this claim as Claim Two in his Rule 3.850 motion (Ex. I at 10–14).  The state circuit court held an evidentiary hearing on this claim (Ex. N at 421–53).  As to the medical records, in the written order denying Petitioner's motion, the court found as fact that Mr. Griffith testified he and Petitioner did not discuss medical records prior to trial (Ex. I at 130).  Mr. Griffith further testified that when his clients ask him to obtain medical records, he routinely obtains them (id.).  Griffith testified he recalled noticing a scar on Petitioner's right arm during trial and asked the court to permit the jury to view Petitioner's arm (id.).  Griffin testified that the trial court granted his request, and he pointed out to the jury that Petitioner had a scar on his right arm, and the person in the video did not (id.).  The state circuit court concluded this trial strategy appeared to be more effective than attempting to introduce medical records, which would have resulted in the defense losing the right to divide their time in closing arguments between an opening argument and a rebuttal argument (id.).

Petitioner included this issue in his initial brief on appeal of the circuit court's denial of his motion (Ex. N).  The First DCA affirmed the decision without written opinion (Ex. P).

---

[9] In Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all former Fifth Circuit decisions rendered before October 1, 1981.

The trial transcript shows that during the defense's case, Mr. Griffith asked Petitioner to stand in front of the jury and allow the jurors to "get a good look" at his face, neck and arms (Ex. D at 121).  Petitioner stood in front of the jury and displayed himself (*id.*).  During closing argument, Mr. Griffith argued first and stated, in relevant part:

> . . . you must have noticed that Ricky Roulhac has a scar on the inside of his right arm.  And when you watch the videotape you should have noticed that there was no scar on the arm of the person in the videotape.  You saw the videotape. Could you identify the face of the person that you saw in the videotape?  I would suggest to you the videotape is not that good and the person is not Ricky Roulhac and I would submit to you that the scar on Ricky Roulhac's arm proves that is was not Ricky Roulhac that sold the substance.  The videotape doesn't lie and you saw his arms and you saw the scar.

(Ex. D at 125–26).  After the prosecutor made her closing, Mr. Griffith gave last closing argument and argued that the face of the seller was in the video for only a few seconds, which was insufficient time to provide a basis for the officers' positive identification of Petitioner as the person in the video (*id.* at 143).

At the post-conviction evidentiary hearing, Mr. Griffith testified as described by the post-conviction court in its written order.  Griffith testified that when his clients ask him to obtain medical records, he routinely asks them to sign a release and obtains the records (Ex. K at 191–92, 202).  He further testified if he and Petitioner had discussed any scarring, it would have appeared in his notes from their meeting (*id.* at 191–92, 204).  Mr. Griffith testified there was no information in his file that he and Petitioner discussed the scar or Petitioner's medical records, or that he asked Petitioner to sign a medical release (*id.* at 191–92, 202–04).  He testified that the first time the issue of a scar arose was at trial, when he (Griffith) "came up with it" (*id.* at 192–93, 204).

Under Florida law as it existed at the time of Petitioner's trial, the defense could avail itself of a strategic procedural advantage by limiting the presentation of evidence to only the defendant's testimony.  Fla. R. Crim. P. 3.250 (2004).  If the defense did so, it maintained the primacy and recency effect in the closing argument "sandwich" or, in other words, the benefits inherent in giving both first and last closing argument.  *See* <u>Beasley v. State</u>, 18 So. 3d 473, 491–92 (Fla. 2009).  By not presenting medical records but displaying Petitioner's arms to the jury, Mr. Griffith was able to present evidence of the scar without losing the advantage of first and last closing argument.

Therefore, Petitioner failed to show that counsel's presenting Petitioner's arms to the jury rather than presenting his medical records constituted deficient performance.  Further, Petitioner failed to provide any evidence to the state court suggesting that his medical records would have reflected he had injuries to his arms in 2001.  Therefore, he failed to establish a reasonable probability that the jury would have acquitted him if they had seen his medical records.

As to counsel's failure to call witnesses, the state circuit court found as fact that Petitioner testified at the evidentiary hearing that he told Mr. Griffith that Dorthy and Jina Roulhac could watch the video and testify that he was not the person in the video (Ex. I at 130).  The court noted Petitioner also testified he told counsel that Chris Chambers and Michael Hooks could testify that Petitioner did not make the drug sale (*id.*).  The court further noted that Mr. Griffith testified Petitioner never told him about Dorthy or Jina Roulhac as potential witnesses (*id.*).  Further, he did not believe that their testimony would be admissible if they were simply going to watch the video and opine that Petitioner was not the person in the video (*id.*).  As to Chambers and Hooks, the court noted that Mr. Griffith testified Petitioner never mentioned these two individuals until after his trial and sentencing, when he (Petitioner) filed a complaint against him with the Florida Bar in October of 2004 (*id.* at 30, 133–36).  The post-conviction court also noted that correspondence between Mr. Griffith, Florida Bar investigators, and Petitioner, which was introduced as evidence at the evidentiary hearing, showed that the investigators attempted to contact Chris Chambers and Michael Hooks between October 12, 2004 and December 13, 2004, but their telephones were disconnected, and they failed to respond to correspondence from the Bar (*id.*).  The post-conviction court found that it was unclear what, if any, relevant evidence these individuals could have offered.

Petitioner has presented no factual support for his assertions as to the content of testimony of any of the proposed witnesses.  Petitioner's speculation on these matters is insufficient to demonstrate that counsel's failure to present their testimony at trial was unreasonable.  Petitioner's unfounded assertions are likewise insufficient to demonstrate a reasonable probability that the outcome of trial would have been different had the jury heard their testimony.  Therefore, he has failed to show that the state court's adjudication of his claim was an unreasonable application of Strickland.  Accordingly, he is not entitled to federal habeas relief on Ground Three.

V.        CERTIFICATE OF APPEALABILITY

As amended effective December 1, 2009, § 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2); <u>Slack v. McDaniel</u>, 529 U.S. 473, 483–84, 120 S. Ct. 1595, 1603–04, 146 L. Ed. 2d 542 (2000) (explaining how to satisfy this showing) (citation omitted).  Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

The second sentence of new Rule 11(a) provides:  "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is **ORDERED**:

The clerk of court is directed to change the docket to reflect that Edwin G. Buss is substituted for Walter A. McNeil as Respondent.

And it is respectfully **RECOMMENDED**:

1.      That the petition for writ of habeas corpus (Doc. 1) be **DENIED**.

2.      That a certificate of appealability be **DENIED**.

At Pensacola, Florida, this 6th day of July 2011.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M.  TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**

## <u>NOTICE TO THE PARTIES</u>

**Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).**